STATE OF NORTH CAROLINA v. CRAIG CLIFFORD WISSINK

No. COA04-1081

(Filed 16 August 2005)

**1. Constitutional Law— effective assistance of counsel—dismissal of claims without prejudice**

Defendant's claims of ineffective assistance of counsel in a first-degree murder, discharging a firearm into occupied property, and misdemeanor larceny of a motor vehicle case are overruled without prejudice where the claims cannot be determined from the face of the record, and defendant may raise these claims in a postconviction motion for appropriate relief.

**2. Homicide— first-degree murder—short-form indictment—constitutionality**

The short-form indictment used to charge defendant with first-degree murder was constitutional under *Blakely v. Washington*, 542 U.S. 296 (2005).

**3. Indictment and Information— amendment—date of murder**

The trial court did not err by allowing the State to amend a murder indictment on the morning of trial to show that the murder occurred on 27 June 2000 instead of on or about 26 June 2000 as alleged in the original indictment, because: (1) an amendment may properly be made to an indictment to correct the date of the offense since it does not substantially alter the charge set forth in the indictment; and (2) the date of the offense has no bearing on defendant's sentence, nor did it enhance defendant's sentence in any way, so that the *Blakely* decision was not implicated.

**4. Homicide— first-degree murder—date of offense—no variance—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder, because: (1) the Court of Appeals already concluded that the indictment was properly amended to allege the correct date; (2) the State may prove that

STATE v. WISSINK

[172 N.C. App. 829 (2005)]

an offense charged was committed on some date other than the time named in the bill of indictment; and (3) the evidence of defendant's guilt was overwhelming.

**5. Sentencing— prior record level—enhancement factor not submitted to jury—no knowing stipulation or waiver— *Blakely* error**

The trial court erred in enhancing defendant's sentence by adding a point to defendant's prior record level based upon a finding that defendant was on probation at the time he committed the crime without submitting the issue of defendant's probationary status to the jury for a finding beyond a reasonable doubt. Defendant did not knowingly stipulate his probationary status or waive his right to a jury trial on the issue when his attorney stated at the sentencing hearing that defendant was on probation and thus had a prior record level IV because the decisions of *Blakely v. Washington*, 542 U.S. 296, and *State v. Allen*, 359 N.C. 425, had not been issued at the time of defendant's trial and defendant was thus not aware of his right to have a jury determine the existence of a sentence enhancement.

**6. Appeal and Error— preservation of issues—failure to argue**

Defendant's assignments of error that were not argued in his brief are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

Appeal by defendant from judgments entered 1 April 2004 by Judge Knox V. Jenkins in Superior Court, Cumberland County. Heard in the Court of Appeals 11 May 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*M. Alexander Charns for defendant.*

McGEE, Judge.

Craig Clifford Wissink (defendant) pled not guilty to charges of first degree murder, conspiracy to commit robbery with a dangerous weapon, attempted robbery with a dangerous weapon, discharging a firearm into occupied property, and felonious larceny of a motor vehicle. Prior to trial, the State dismissed the charge of conspiracy to commit robbery with a dangerous weapon. A jury found defendant guilty of first degree murder, attempted robbery with a firearm, discharging a firearm into occupied property, and misdemeanor larceny

of a motor vehicle. The trial court arrested judgment for the charge of attempted robbery with a firearm, since it merged with the first degree murder charge. *See State v. Goldston*, 343 N.C. 501, 504, 471 S.E.2d 412, 414 (1996). The trial court sentenced defendant to life imprisonment without parole for the first degree murder charge, thirty-seven to fifty-four months for the charge of discharging a firearm into occupied property, and sixty days for the charge of misdemeanor larceny of a motor vehicle. Defendant appeals.

The evidence at trial tended to show that around 10:00 p.m. on 27 June 2000, two individuals knocked on the door of a trailer belonging to Jonathan Pruey (Pruey). As Pruey approached the door, the individuals opened the door from outside. Pruey and his roommate, Corrie Cordier (Cordier), attempted to close the door. One of the individuals, who was wearing a Halloween hockey mask, fell in through the door. Cordier "stomped down" on the individual's face and Pruey slammed the door shut, bracing himself against it. A few seconds later, Cordier heard a loud noise, a moan, someone stumbling in the living room, and then the sound of someone hitting the floor. Pruey's wife and another roommate turned on the lights and saw Pruey lying on his back on the kitchen floor. Pruey was losing a large amount of blood from his chest and mouth.

Michael Grimes (Grimes), Pruey's neighbor, heard a gunshot and screaming around 10:30 p.m. on 27 June 2000. Grimes looked out his window and saw at least two individuals speed off in a vehicle. After unsuccessfully chasing the vehicle on foot, Grimes returned home and called 911. Pruey's wife came to Grimes's home and told Grimes that Pruey had been shot. Grimes went to Pruey's home, where Pruey was lying on the kitchen floor. Shortly thereafter, law enforcement and an ambulance arrived at the scene. Pruey died from his wound.

Dr. Kenneth Lidonnici (Dr. Lidonnici) performed an autopsy on Pruey. Dr. Lidonnici testified that he observed a major entrance wound in Pruey's chest about one inch in diameter, and three smaller entrance wounds surrounding the major wound. Dr. Lidonnici found multiple metal pellets in the muscles of Pruey's back, as well as a piece of plastic embedded in one of the chambers of Pruey's heart. Dr. Lidonnici testified that Pruey died from a shotgun wound to the chest, and that Pruey would not have been able to survive very long after sustaining the injury.

Dr. Lidonnici gave the metal pellets and piece of plastic to Samuel Goshorn (Goshorn), a crime scene investigator with the Cumberland

County Sheriff's Department. Goshorn testified that the metal pellets came from a shotgun shell. Goshorn also testified that the piece of plastic found in Pruey's heart was wadding from a shotgun shell.

Catherine Price (Price), testified that she was acquainted with defendant through her children. Price owned a green four-door 1992 Mazda Protegé. Price testified that she had allowed defendant to use the vehicle a few weeks prior to 27 June 2000. Price's children called Price on 27 June 2000 and reported that the vehicle was missing from Price's yard. Price reported the vehicle stolen around midnight.

Brandy Gass (Gass), defendant's girlfriend, testified that she saw defendant and Lawrence Ash (Ash) in Price's car at around 5:00 or 6:00 p.m. on 27 June 2000. Defendant told Gass that "he had some things to go take care of and that he would be back later on" in the evening. Defendant and Ash left together. At around 10:00 p.m., defendant called Gass, who was at a friend's house, and told Gass to come home alone. Gass walked home and when she arrived, she saw some clothes and shoes burning in a pile outside. Gass recognized the clothes and shoes as those that defendant and Ash had been wearing earlier that evening. Gass met defendant inside and noticed that defendant's nose was bleeding and looked as if it had been broken. Defendant told Gass that he was leaving for Arizona. Gass agreed to go with him, and they left in Price's vehicle. Defendant and Gass made a stop, and defendant got out of the vehicle and had a conversation with several individuals. Gass recognized Damion Jackson (Jackson) as one of the individuals.

Jackson testified that he was acquainted with both defendant and Pruey. Jackson stated that he had been to Pruey's home with defendant a few times, the last time being a week or two before Pruey was shot. Jackson stated that he and defendant had seen money and marijuana in Pruey's home.

Jackson testified that on the night of 27 June 2000, he was standing in the middle of the street when defendant pulled up in a vehicle with Gass. Jackson stated that defendant was pale, had "a gash like he had been hit in the nose[,]" was bleeding and was acting panicky. Defendant told Jackson about the shooting and asked Jackson for money. Jackson testified that defendant said, "I shot somebody. I think he's dead."

Defendant returned to the vehicle and he and Gass left for Arizona. Two or three hours later, defendant and Gass stopped at a

**STATE v. WISSINK**

[172 N.C. App. 829 (2005)]

rest stop and defendant told Gass he needed to tell her something. They sat down at a picnic table, and defendant told Gass that defendant and Ash had attempted to commit a robbery. Defendant stated that he first knocked on a trailer door, and then kicked in the door. Defendant said that he fell and got kicked in the face. A struggle ensued and the individuals inside the trailer were able to close the door. Defendant stated that Ash then fired a shot through the door from a shotgun.

Defendant and Gass started driving again and made several stops. Gass testified that at one stop, defendant went to the vehicle's trunk to change his clothes. Gass observed a shotgun, taken apart, and wrapped in a sheet inside the trunk. Gass stated that she had seen this shotgun a few weeks earlier when defendant had borrowed the shotgun from a friend.

Defendant and Gass eventually arrived in Arizona and stayed at defendant's mother's home. Approximately a week later, police arrived at the home and arrested defendant and Gass.

Sam Pennica (Pennica), Chief of Detectives at the Cumberland County Sheriff's Office, interviewed defendant on 20 July 2000. Pennica obtained a written waiver of defendant's *Miranda* rights. In his statement to law enforcement, defendant stated that he told Jackson on 27 June 2000 that he needed money and wanted to get out of town because he had violated his probation and was scared he would be put in prison. Jackson told defendant that Pruey had $1,000 to $1,500 and one-half to one pound of marijuana in Pruey's house. Jackson also told defendant that there was no gun in Pruey's house. Defendant agreed to give Jackson half of the money that defendant would steal from Pruey's house. Defendant stated that Ash was present for this conversation.

Defendant stated that he and Ash drove to Pruey's home that night and that the shotgun was in Ash's possession. When they approached the door, a struggle with Pruey ensued. Defendant stated that after Pruey closed and leaned up against the door, defendant began to run off the porch. Defendant then heard a gunshot. Defendant turned around and saw holes in the door. Defendant stated that he kept asking Ash, "why did you do it?" Ash "begg[ed]" defendant not to tell anyone. Defendant then admitted that he stole Price's vehicle to flee to Arizona.

I.

**[1]** Defendant argues that he received ineffective assistance of counsel at several stages throughout the trial. Defendant contends that it was ineffective assistance of counsel to: (1) fail to move to suppress defendant's statement to police, (2) fail to object to portions of defendant's statement in which he admitted additional, unrelated crimes and misconduct, and (3) withdraw a written request for complete recordation of jury selection, all evidence presented, bench conferences and arguments of counsel. However, defendant admits that he cannot, on direct appeal, prove from the cold record that ineffective assistance of counsel did in fact occur. Therefore, defendant raises these claims for preservation purposes.

Our General Statutes mandate that a defendant raise his claims of ineffective assistance of counsel on direct appeal. N.C. Gen. Stat. § 15A-1419(a)(3) (2003); *State v. Jackson*, 165 N.C. App. 763, 776, 600 S.E.2d 16, 25, *disc. review denied*, 359 N.C. 72, 604 S.E.2d 923 (2004). However, "because of the nature of [these] claims, defendants likely will not be in a position to adequately develop many [ineffective assistance of counsel] claims on direct appeal." *State v. Fair*, 354 N.C. 131, 167, 557 S.E.2d 500, 525 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). Therefore, a defendant must raise ineffective assistance of counsel claims on direct appeal in order to avoid forfeiting collateral review. *State v. Lawson*, 159 N.C. App. 534, 544, 583 S.E.2d 354, 361 (2003).

As defendant acknowledges, we cannot determine from the face of the record whether defendant received ineffective assistance of counsel. We overrule these assignments of error without prejudice and hold that defendant may raise his ineffective assistance of counsel claims in a postconviction motion for appropriate relief. *See State v. Long*, 354 N.C. 534, 540, 557 S.E.2d 89, 93 (2001).

II.

**[2]** Defendant next argues that the short form indictment for murder used in this case is constitutionally defective under *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). Defendant argues that under *Blakely*, every fact essential to his punishment must have been charged in the indictment. We disagree.

In *State v. Allen*, 359 N.C. 425, 438, 615 S.E.2d 256, 265 (2005), our Supreme Court recently held that "sentencing factors which might lead to a sentencing enhancement" need not be alleged in a North

Carolina state court indictment. The Court also reiterated its holding in *State v. Hunt*, 357 N.C. 257, 272-73, 582 S.E.2d 593, 603-04, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003), wherein the Court stated that "the United States Supreme Court has not applied the Fifth Amendment indictment requirements to the states." As a result, we find that the short-form murder indictment is not unconstitutional under *Blakely*.

Furthermore, our Courts have repeatedly upheld the use of short-form murder indictments. *State v. Squires*, 357 N.C. 529, 537, 591 S.E.2d 837, 842 (2003), *cert. denied*, 541 U.S. 1088, 159 L. Ed. 2d 252 (2004) ("[The North Carolina Supreme Court] has consistently held that the short-form first-degree murder indictment serves to give a defendant sufficient notice of the nature and cause of the charges against him or her."); *Hunt*, 357 N.C. at 278, 582 S.E.2d at 607 ("[The North Carolina Supreme Court] has consistently concluded that [the short-form murder] indictment violates neither the North Carolina nor the United States Constitution."); *State v. Ray*, 149 N.C. App. 137, 143, 560 S.E.2d 211, 216 (2002), *aff'd per curiam*, 356 N.C. 665, 576 S.E.2d 327 (2003) (recognizing that a short-form murder indictment provides a defendant with sufficient notice of the State's theory on which the defendant would be tried). We overrule this assignment of error.

III.

[3] Defendant next argues that it was error for the trial court to allow an amendment to the murder indictment on the morning of trial. The original indictment alleged that the murder occurred "on or about [26 June 2000][.]" The evidence showed that the murder actually occurred on 27 June 2000. The trial court permitted the State to amend the indictment in open court on the morning that trial began.

Defendant acknowledges that an amendment may properly be made to an indictment to correct the date of the offense, since it does not " 'substantially alter the *charge* set forth in the indictment.' " *State v. Price*, 310 N.C. 596, 598-99, 313 S.E.2d 556, 558-59 (1984), (quoting *State v. Carrington*, 35 N.C. App. 53, 58, 240 S.E.2d 475, 478, *disc. review denied*, 294 N.C. 737, 244 S.E.2d 155 (1978)); *see also State v. Brinson*, 337 N.C. 764, 767, 448 S.E.2d 822, 824 (1994). However, defendant argues that under *Blakely*, "[i]f factors which aggravate a defendant's sentence must be set out in the indictment and found beyond a reasonable doubt by a jury, the correct date of [the offense] must be alleged in the indictment and found by the jury

beyond a reasonable doubt." As noted above, our Supreme Court in *Allen* directed that aggravating factors need not be alleged in the indictment. *Allen*, 359 N.C. at 438, 615 S.E.2d at 265. Moreover, the date of the offense has no bearing on defendant's sentence, nor did it enhance defendant's sentence in any way. The trial court did not err in permitting the State to amend the indictment.

## IV.

**[4]** Defendant next assigns error to the trial court's denial of defendant's motion to dismiss due to insufficiency of the evidence. Defendant argues that the evidence showed that Pruey was killed on 27 June 2000, but that the murder indictment alleged that the offense occurred on 26 June 2000. Defendant argues that the motion to dismiss should therefore have been granted.

We first note that we have rejected defendant's argument that the indictment was improperly amended. Therefore, the indictment alleged that the offense occurred on 27 June 2000, in accordance with the evidence at trial. In addition, "[t]he State may prove that an offense charged was committed on some date other than the time named in the bill of indictment." *Price*, 310 N.C. at 599, 313 S.E.2d at 559 (citing *State v. Wilson*, 264 N.C. 373, 141 S.E.2d 801 (1965)). We also note that the evidence of defendant's guilt was overwhelming. The trial court did not err in denying defendant's motion to dismiss.

## V.

**[5]** Defendant's final assignment of error contends that the trial court erred at the sentencing hearing by enhancing defendant's prior record level from III to IV. The trial court found that defendant committed the offense of discharging a firearm into occupied property while defendant was on probation. As a result, defendant's prior record level points increased from eight to nine, and his prior record level increased from III to IV. N.C. Gen. Stat. § 15A-1340.14(b)(7) (2003) (if a defendant commits an offense while on probation, the defendant is assigned one point); N.C. Gen. Stat. § 15A-1340.14(c)(4) (2003) (a defendant with nine prior record points has a prior record Level IV).

Defendant first argues that the sentence enhancement that defendant committed the offense while on probation should have been alleged in an indictment. Again, we note that our Supreme Court in *Allen* held that sentencing factors need not be set out in an indict-

STATE v. WISSINK

[172 N.C. App. 829 (2005)]

ment. *Allen*, 359 N.C. at 438, 615 S.E.2d at 265. Under *Allen*, we find that it was not necessary for the fact that defendant committed the offense while on probation to have been alleged in an indictment.

Defendant next argues that the trial court erred by adding a point to defendant's prior record level when it did not submit to the jury the issue of whether defendant was on probation at the time he committed the offense. We find that this argument has merit.

Under *Blakely* and *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), *"[o]ther than the fact of a prior conviction, any fact* that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." *Allen*, 359 N.C. at 437, 615 S.E.2d at 265 (emphasis added). In *Apprendi*, the Supreme Court reasoned that the fact of a prior conviction need not be proven to the jury because of the "certainty that procedural safeguards attached to any 'fact' of prior conviction[.]" *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 454. The Court stated:

> [T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.

*Id.* at 496, 147 L. Ed. 2d at 458-59.

In this case, a fact other than a prior conviction, defendant's probationary status, that increased defendant's sentence was not submitted to a jury and proved beyond a reasonable doubt. We recognize, as the State argues, that the fact of a defendant's probationary status is analogous to and not far-removed from the fact of a prior conviction. However, we find that we are bound by the language in *Blakely*, *Apprendi* and *Allen* that states that only the fact of a prior conviction is exempt from being proven to a jury beyond a reasonable doubt. Furthermore, we note that the fact of defendant's probationary status did not have the procedural safeguards of a jury trial and proof beyond a reasonable doubt recognized in *Apprendi* as providing the necessary protection for defendants at sentencing. We find that the trial court erred by adding a point to defendant's prior record level without first submitting the issue to a jury to find beyond a reasonable doubt. We remand for resentencing.

The State argues that defendant stipulated to the fact that he was on probation when he committed the offense. At trial, the following colloquy occurred:

> [ATTORNEY FOR THE STATE]: . . . [The prior record level work-sheet shows that defendant] has two—eight points plus a one point, that's a—he was on probation at the time of this offense, which gives him nine record level points, and he's a level IV for the—for sentencing, Your Honor. . . .
>
> THE COURT: All right.
>
> [ATTORNEY FOR DEFENDANT]: I think that's correct, Your Honor.

A criminal defendant has a constitutional right to a jury trial on the issue of whether a defendant's sentence should be enhanced. *Blakely*, 542 U.S. at ——, 159 L. Ed. 2d at 414-15; *Allen*, 359 N.C. at 437-38, 615 S.E.2d at 264-65. The waiver of a right to a jury trial "not only must be voluntary but must be [a] knowing, intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756 (1970). At the time of defendant's trial and sentencing hearing, neither *Blakely* nor *Allen* had been decided. Therefore, defendant was not aware of his right to have a jury determine the existence of the sentence enhancement, and his admission to his probationary status was not a "knowing [and] intelligent act[] done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748, 25 L. Ed. at 756. We conclude that defendant did not stipulate to the fact of his probationary status. *See also State v. Everette*, 172 N.C. App. 237, 616 S.E.2d 237 (2005); *State v. Meynardie*, 172 N.C. App. 127, 616 S.E.2d 21 (2005).

**[6]** We deem abandoned those assignments of error not addressed in defendant's brief. N.C.R. App. P. 28(b)(6).

No error; remanded for resentencing.

Judges CALABRIA and ELMORE concur.