STATE v. CANNON

[216 N.C. App. 507 (2011)]

STATE OF NORTH CAROLINA v. PAUL JASON CANNON

No. COA11-327

(Filed 1 November 2011)

**1. Possession of Stolen Property—felony possession of stolen goods—motion to dismiss—sufficiency of evidence—knew or should have reasonably known stolen**

The trial court erred by denying defendant's motion to dismiss the charge of felony possession of stolen goods. There was no evidence in the record regarding the circumstances by which defendant gained possession of the four-wheeler. The State's evidence that the decals had been removed and another sticker attached, even viewed in the light most favorable to the State, fell short of providing substantial evidence that defendant knew or should have reasonably known that the four-wheeler was stolen.

**2. Sentencing—prior record level—crime committed while on probation—Blakely error—harmless error**

The trial court did not err by sentencing defendant for the charge of possession of a firearm by a felon as a prior record level V. Even though the issue of whether defendant was on probation at the time he committed this offense was not submitted to the jury, any alleged *Blakely* error was harmless beyond a reasonable doubt based on the overwhelming and uncontroverted evidence that defendant committed the offense while on probation. Further, assigning another point under N.C.G.S. § 15A-1340.14(b)(6) was harmless error since its exclusion would not reduce defendant's prior record level or reduce his sentence.

Appeal by defendant from judgments entered 23 September 2010 by Judge Thomas D. Haigwood in Superior Court, Martin County. Heard in the Court of Appeals 29 September 2011.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Daniel D. Addison, for the State.*

*Geoffrey W. Hosford, for defendant-appellant.*

STROUD, Judge.

Paul Jason Cannon ("defendant") appeals from his convictions for felony possession of stolen goods and possession of a firearm by

a convicted felon. For the following reasons, we vacate defendant's conviction for felony possession of stolen goods and find no prejudicial error as to defendant's sentencing on the charge of possession of a firearm by a felon.

## I. Background

On 2 February 2010, defendant was indicted for felony possession of stolen goods, five counts of communicating threats, carrying a concealed weapon, resisting a public officer, injury to personal property, and possession of a firearm by a felon. Defendant was tried on these charges during the 20 September 2010 Criminal Session of Superior Court, Martin County. The State's evidence presented at trial tended to show the following: Zeb Winslow, Jr. testified that on the morning of 14 July 2009 he discovered that his 1995 Chevrolet pick-up truck and his 2002 Suzuki four-wheeler had been stolen from his premises. Mr. Winslow reported the theft to the Halifax County Sheriff's Department.

On the evening of 26 September 2009, Hillary Eugene Reed, defendant's first cousin, and a group of six or seven of his family members and friends were sitting on Mr. Reed's back deck around 11 p.m., "drinking a couple of beers[,]" after returning from riding four-wheelers. Shortly thereafter, defendant was observed doing "doughnuts" or circles on a four-wheeler in the road in front of Mr. Reed's residence. Defendant then drove the four-wheeler on to Mr. Reed's property and walked up on the back deck with the others. Defendant began drinking beer and whiskey and then got in an argument with and wanted to fight Mr. Reed's son, Jason Reed. Before anything happened, Mr. Reed told defendant to leave the premises. Defendant left on the four-wheeler but subsequently returned for his jacket that he had left on the deck. However, defendant again started an argument with and wanted to fight Jason Reed. Mr. Reed again told defendant he had to leave and walked him back to the four-wheeler. Defendant got onto the four-wheeler and showed Mr. Reed a nine-millimeter pistol in his waistband, implying that he was going to shoot Jason Reed. Mr. Reed asked defendant what kind of gun it was and whether he could see it. While defendant was holding the gun in the palm of his hand, Mr. Reed was able to "snatch" the gun from defendant and handed it to another family member who ejected the bullet that was in the chamber and removed the magazine; other family members took the gun inside Mr. Reed's house to keep it away from defendant. Defendant began accusing them of stealing his gun and telling them

to call 911. After someone called 911, defendant got back on the four-wheeler and said that he was going to go back to his house to get his rifle and come back and kill all of them. At that point, Mr. Reed and another family member took defendant off of the four-wheeler and held him on the ground for about an hour until a deputy sheriff arrived. Defendant was subsequently taken into custody and arrested by Deputy Wesley Cratt of the Martin County Sheriff's Department. Deputy Cratt had the four-wheeler towed and later investigation revealed that it was stolen in Halifax County and matched the serial number for Mr. Winslow's stolen four-wheeler.

Mr. Winslow further testified that even though the truck was discovered the same day, he did not hear anything about his four-wheeler until September 2009 when he received a call that a four-wheeler matching the serial number of the four-wheeler that had been stolen had been recovered. Upon viewing the recovered four-wheeler, Mr. Winslow noted that the decals and stickers had been removed and someone had affixed an "old Honda decal with Honda Motor Sports" on the front. However, he confirmed that the serial number on this four-wheeler matched the number on the bill of sale for his stolen four-wheeler. He also noted that the serial number had not been altered in any way. Mr. Winslow further testified that he estimated the "cost" of the four-wheeler to be around $4,800 to $5,000. He also testified that he did not know defendant but knew "of him" and he did not give defendant permission to take his four-wheeler. He further stated that the key was in the four-wheeler's ignition when it was stolen and was still in the ignition when it was recovered.

At the close of the State's evidence, defendant made a motion to dismiss all of the charges. The trial court consolidated the five communicating threat charges into two separate charges; granted defendant's motion as to the charge of resisting a public officer; and denied defendant's motion as to charges of injury to personal property, second-degree trespass, possession of stolen goods, possession of a firearm by a convicted felon, and carrying a concealed weapon. Defendant did not present any evidence at trial but renewed his motion to dismiss, which was denied by the trial court.

On 23 September 2010, the jury found defendant guilty of felony possession of stolen goods, carrying a concealed weapon, willful and wanton injury to personal property, second-degree trespass, and possession of a firearm by a convicted felon; the jury acquitted defendant of the two charges of communicating threats. Defense counsel stipulated to defendant's prior convictions and the trial court found that

defendant was at prior record level "V" based on 16 prior record points from the prior convictions listed on the prior record level worksheet. The trial court consolidated the injury to personal property, carrying a concealed weapon, and second-degree trespass convictions and sentenced defendant to a term of 97 days imprisonment; a consecutive term of 21 to 26 months imprisonment for the possession of a firearm by a convicted felon conviction; and a consecutive term of 12 to 15 months imprisonment for the possession of stolen goods conviction. Defendant gave notice of appeal in open court. On appeal defendant challenges his conviction for felony possession of stolen goods, arguing that the trial court erred in denying his motion to dismiss for insufficiency of the evidence, and his conviction for possession of a firearm by a convicted felon, arguing that the trial court erred in calculating his prior record level.

## II. Motion to Dismiss

**[1]** Defendant argues that the trial court erred in denying his motion to dismiss as to the charge of felony possession of stolen goods, as the State failed "to produce substantial evidence that [(1) defendant] knew or had reasonable grounds to believe" that the four-wheeler was stolen or (2) that the four-wheeler's value at the time of the theft was greater than $1,000.00.

> The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.

*State v. Phillpott*, ___ N.C. App. ___, ___, 713 S.E.2d 202, 209 (2011) (citation omitted). The essential elements of felonious possession of stolen goods are: "(1) possession of personal property; (2) having a value in excess of [$1,000.00]; (3) which has been stolen; (4) the possessor knowing or having reasonable grounds to believe the property was stolen; and (5) the possessor acting with a dishonest purpose." *State v. Martin*, 97 N.C. App. 19, 25, 387 S.E.2d 211, 214 (1990); *see also* N.C. Gen. Stat. §§ 14-71.1, -72 (2009). Defendant challenges ele-

ments two and four, whether defendant knew or had reasonable grounds to believe the goods were stolen and whether the State put forward sufficient evidence to show that the goods had a value in excess of $1,000.00.

First, defendant contends that the State failed to present substantial evidence that he knew or had reason to know that the four-wheeler was stolen. The State, citing *State v. Lofton*, 66 N.C. App. 79, 310 S.E.2d 633 (1984), counters that testimony by the owner of the four-wheeler "that decals which were originally on the vehicle had been removed after the vehicle was stolen" and "that a Honda sticker had been put on the Suzuki four wheeler after the theft" showed that "the vehicle had been altered to conceal its identification" and "was sufficient to show that Defendant, if he was not the thief, himself, had reason to know the vehicle was stolen." This Court has stated that "[w]hether the defendant knew or had reasonable grounds to believe that the [goods] were stolen must necessarily be proved through inferences drawn from the evidence." *State v. Brown*, 85 N.C. App. 583, 589, 355 S.E.2d 225, 229 (citation omitted), *disc. review denied*, 320 N.C. 172, 358 S.E.2d 57 (1987).

In *Lofton*, a car dealer testified that "a brown, two-door, 1975 Toyota Celica" had been stolen off of the lot at his car dealership. 66 N.C. App. at 80, 310 S.E.2d at 634. Months after the theft, the car dealer spotted the stolen car parked at a convenience store, but there were "numerous cosmetic changes that altered the car's appearance and lessened its fair market value from about $3,000 to $ 500[;] . . . [t]he radio, carpet, exterior stripes, and body side molding had been removed[; and] [t]he console, right front fender, and tires had been exchanged." *Id.* Police discovered that the car had the same serial number as the car that was stolen, so police staked out near the car to see if anyone would return for it. Later the same day the defendant was dropped off at the convenience store and used a key to unlock the trunk. *Id.* at 81, 310 S.E.2d at 634. Upon being confronted by police, the defendant fled but was subsequently arrested and charged with possession of stolen property. *Id.* at 80-81, 310 S.E.2d at 634-35. Defendant contended that it was his brother's car and he did not know the car was stolen. *Id.* at 81-82, 310 S.E.2d at 635. On appeal from a conviction, the defendant contended that the trial court had erred in denying his motion to dismiss for insufficiency of the evidence as to the charge of possession of stolen property, as there was no evidence "he knew or had reason to believe [the car] had been stolen or taken." *Id.* at 83, 310 S.E.2d at 636. This Court in holding

that "Defendant's motion for dismissal was properly denied" explained that

> [t]here was . . . plenary evidence that defendant knew or had reason to believe that the vehicle was stolen. Although defendant testified that his brother was driving a brown, two-door, Toyota Celica when he came to visit in March, the vehicle was not stolen until June. The State's evidence suggested that defendant, who had control and possession of the vehicle, had reason to believe, from the numerous cosmetic changes altering the car's appearance and lowering its fair market value, that the vehicle was stolen. Since June, the radio, carpet, exterior stripes, and body side molding had been removed; the console, right front fender, and tires had been exchanged. Further question of defendant's guilty knowledge was raised by the fact that the car had been parked, unauthorized, in a Seven-Eleven parking lot.

> Finally, and most damaging was the fact that when Deputy Sheriff Davis pulled into the Seven-Eleven parking lot on 24 November, defendant fled. While flight is not, in itself, an admission of guilt, it is a fact which, once established, may be considered along with other circumstances in determining a defendant's guilt. *State v. Stewart*, 189 N.C. 340, 127 S.E. 260 (1925); *State v. Swain*, 1 N.C. App. 112, 160 S.E. 2d 94 (1968); 2 Brandis on North Carolina Evidence § 178 (1982).

*Id.* at 83-84, 310 S.E.2d at 636.

Here, like *Lofton*, there was testimony from the owner, Mr. Winslow, that there were "cosmetic changes altering the [four-wheeler's] appearance" when it was recovered, specifically the decals and stickers had been pulled off of it and someone had affixed an "old Honda decal with Honda Motor Sports" to the front. However, the only other evidence in the record as to the four-wheeler is that four witnesses testified that defendant twice drove to Mr. Reed's premises on the four-wheeler, which Deputy Cratt had towed away after defendant's arrest. Only after further investigation did the sheriff's department discover that the four-wheeler had been stolen from Halifax County. Contrary to the State's contention, the ruling in *Lofton* was not based solely on the cosmetic changes to the car, but this Court also considered the fact that the car had been abandoned and the "most damaging" evidence that the defendant had fled from the scene when he realized the police saw him opening the car. *See id.* at 83-84, 310 S.E.2d at 636. Unlike *Lofton*, here the "cosmetic changes" were

minimal compared to the "numerous" changes to the car, as they were limited to the removal and replacement of the decals. Unlike in *Lofton*, the four-wheeler was not hidden or abandoned, but defendant was observed openly driving the four-wheeler and doing "doughnuts" in the road with it, which would have drawn attention to him. Defendant did not flee the scene when police arrived, like the defendant in *Lofton*, but was physically restrained when the deputy sheriff arrived and made no mention of the four-wheeler to the deputy. Also, the key was still in the four wheeler's ignition when defendant was using it. We further note that there is no evidence in the record regarding the circumstances by which defendant gained possession of the four-wheeler. *See Brown*, 85 N.C. App. at 589, 355 S.E.2d at 229 (noting "[t]he fact that a defendant is willing to sell property for a fraction of its value is sufficient to give rise to an inference that he knew, or had reasonable grounds to believe, that the property was stolen"); *State v. Parker*, 316 N.C. 295, 304, 341 S.E.2d 555, 560 (1986) (noting that "knowledge or reasonable belief can also be implied where a defendant-buyer buys property at a fraction of its actual cost").[1] Therefore, the State's evidence that the decals had been removed and another sticker attached, even viewed in the light most favorable to the State, *see Phillpott*, ___ N.C. App. at ___, 713 S.E.2d at 209, falls well short of providing "substantial evidence" that defendant knew or should have reasonably known that the four-wheeler was stolen, as necessary to permit this charge to go to a jury. Therefore, the trial court erred in denying defendant's motion to dismiss the charge of felony possession of stolen goods and we vacate defendant's conviction and sentence as to this charge. As we have vacated defendant's conviction and sentence, we need not address his additional argument as to the value of the four-wheeler.

---

1. At trial, the prosecutor argued that the fact that the four-wheeler was found in defendant's possession only two months after it was stolen should also be considered, alluding to the doctrine of recent possession. *See State v. Joyner*, 301 N.C. 18, 28, 269 S.E.2d 125, 132 (1980). Although the doctrine has primarily been applied to prove charges of breaking and entering or larceny, *see State v. Milligan*, 192 N.C. App. 677, 682, 666 S.E.2d 183, 187 (2008), it has also been permitted in the context of a charge for possession of stolen goods. *See State v. McQueen*, 165 N.C. App. 454, 459-60, 598 S.E.2d 672, 676-77 (2004), *disc. review denied*, 359 N.C. 285, 610 S.E.2d 385 (2005). Here, the State raises no argument on appeal as to the doctrine of recent possession; the trial court made no indication in his ruling denying defendant's motion to dismiss that he considered the doctrine; and the State, during the charge conference, made no request for an instruction as to the doctrine and no instruction as to the doctrine of recent possession was given to the jury. Therefore, we need not address this issue.

III.  Prior record level

[2]  Defendant next contends that he should receive a new sentencing hearing for his conviction for possession of a firearm by a felon because "the trial court erred in sentencing [him] at prior record level V." Defendant argues that it was error for the trial court to add another prior record level point based on the fact that the offense was committed while he was on probation, pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(7), as it failed to submit this factor to a jury and have a jury find it beyond a reasonable doubt before relying on it in calculating his prior record level. We review the calculation

> of an offender's prior record level [as] a conclusion of law that is subject to *de novo* review on appeal. It is not necessary that an objection be lodged at the sentencing hearing in order for a claim that the record evidence does not support the trial court's determination of a defendant's prior record level to be preserved for appellate review.

*State v. Bohler*, 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009) (citations omitted), *disc. review denied*, ___ N.C. ___, 691 S.E.2d 414 (2010). According to N.C. Gen. Stat. § 15A-1340.14(a) (2009), "[t]he prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court, or with respect to subdivision (b)(7) of this section, the jury, finds to have been proved in accordance with this section[.]" Thus, N.C. Gen. Stat. § 15A-1340.14(b)(1)-(5) assigns points based on the class of the prior conviction and whether it is classified as a felony or misdemeanor. However, N.C. Gen. Stat. § 15A-1340.14(b)(7), which, as noted above, must be found by a jury, states that "[i]f the offense was committed while the offender was on supervised or unsupervised probation, parole, or post-release supervision, or while the offender was serving a sentence of imprisonment, or while the offender was on escape from a correctional institution while serving a sentence of imprisonment, 1 point [should be assigned]." Here, defendant was assessed to have 14 points based on his prior convictions and, pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(7), was assessed an additional point, which gave him 15 prior record level points, moving him from a prior record level of "IV" to a "V[.]"[2] But the trial

2. In 2009, the required prior record level points for each prior record level in N.C. Gen. Stat. § 15A-1340.14(c) were changed with Level "V" being decreased from 15 to 18 prior record level points to "[a]t least 14, but not more than 17 points." However, these changes apply only to offenses committed on or after 1 December 2009 and defendant's offense date for possession of a firearm by a felon is 27 September 2009. 2009 N.C. Sess. Laws 555 §§ 1, 3.

STATE v. CANNON

[216 N.C. App. 507 (2011)]

court did not submit the N.C. Gen. Stat. § 15A-1340.14(b)(7) issue of whether he was on probation to a jury. Yet defense counsel did stipulate to information in the prior record level worksheet. The last page of the worksheet reads:

> The prosecutor and defense counsel, or the defendant, if not represented by counsel, stipulate to the information set out in Sections I and IV of this form, and agree with the defendant's prior record level or prior conviction level as set out in Section II based on the information herein.

The date, the prosecutor's signature, and defense counsel's signature appear below this paragraph. In section one, the worksheet states that "the offense was committed: (a) while on supervised or unsupervised probation, parole, or post-release supervision[,]" and assigns defendant one additional point for this finding. Therefore, the issue before us is whether a defendant could stipulate to this finding through his counsel's signature on the prior record level worksheet or whether this finding regarding whether defendant was on probation when he committed the crime had to go to a jury. This Court has previously addressed this issue in *State v. Wissink*, 172 N.C. App. 829, 617 S.E.2d 319 (2005) (*"Wissink I"*) and the related subsequent case *State v. Wissink*, 187 N.C. App. 185, 652 S.E.2d 17 (2007) (*Wissink II"*).

In *Wissink I*, the trial court "enhance[ed] defendant's prior record level from III to IV" pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(7), after the defendant stipulated that he had "committed the offense of discharging a firearm into occupied property while [he] was on probation[.]" 172 N.C. App. at 836-37, 617 S.E.2d at 324-25. This Court concluded that the stipulation was not properly made and, "the trial court erred by adding a point to defendant's prior record level without first submitting the issue to a jury to find beyond a reasonable doubt" and remanded for resentencing. *Id.* at 837-38, 617 S.E.2d at 325. The State petitioned for discretionary review and our Supreme Court remanded specifically as to this issue to the Court of Appeals for reconsideration in light of its decisions in *State v. Hurt*, 361 N.C. 325, 330, 643 S.E.2d 915, 918 (2007) and *State v. Blackwell*, 361 N.C. 41, 44, 49-51, 638 S.E.2d 452, 455, 458-59 (2006), *cert. denied*, 550 U.S. 948, 167 L. Ed. 2d 1114 (2007). *State v. Wissink*, 361 N.C. 418-19, 645 S.E.2d 761 (2007). On remand in *Wissink II*, this Court reconsidered the issue as directed. *State v. Wissink*, 187 N.C. App. 185, 652 S.E.2d 17 (2007). In *Wissink II*, this Court first examined the applicable United States Supreme Court decisions:

In *Apprendi v. New Jersey*, 530 U.S. 466, 147 L.Ed. 2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 147 L. Ed. 2d at 455. In *Blakely v. Washington*, 542 U.S. 296, 159 L.Ed. 2d 403, *reh'g denied*, 542 U.S. 961, 159 L.Ed. 2d 851 (2004), the Supreme Court further held:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* . . . In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose without any additional findings.

*Id.* at 303-04, 159 L.Ed. 2d at 413-14 (internal citations omitted).

*Id.* at 187, 652 S.E.2d at 19 (emphasis in original). This Court then summarized the relevant holdings in the cases it was instructed to reconsider:

> In *Hurt*, our Supreme Court held that "a judge may not find an aggravating factor on the basis of a defendant's admission unless that defendant personally or through counsel admits the necessary facts or admits that the aggravating factor is applicable." *Hurt*, 361 N.C. at 330, 643 S.E.2d at 918. This holding seems to suggest that when defense counsel admits the facts necessary for an aggravating factor, such a finding by a trial court does not constitute *Blakely* error.
>
> In *Blackwell*, our Supreme Court held that in accordance with *Washington v. Recuenco*, 548 U.S. 212, 165 L.Ed. 2d 466 (2006), *Blakely* error is subject to harmless error review. *Blackwell*, 361 N.C. at 44, 638 S.E.2d at 455. "In conducting harmless error review, we must determine from the record whether the evidence against the defendant was so 'overwhelming' and 'uncontroverted' that any rational fact-finder would have found the disputed aggravating factor beyond a reasonable doubt." *Id.* at 49, 638 S.E.2d at 458 (citing *Neder v. United States*, 527 U.S. 1, 9, 144 L.Ed. 2d 35, 47 (1999)). Our Supreme Court further held that "[a] defendant may not avoid a conclusion that evidence of an aggravating factor is 'uncontroverted' by merely raising an objection at trial. Instead, the defendant must 'bring forth facts contesting the omit-

STATE v. CANNON

[216 N.C. App. 507 (2011)]

ted element,' and must have 'raised evidence sufficient to support a contrary finding.' " *Id.* at 50, 638 S.E.2d at 458 (quoting *Neder*, 527 U.S. at 19, 144 L.Ed. 2d at 53).

*Id.* at 188, 652 S.E.2d at 19-20. After noting the State's argument that the defense counsel's statements at trial amounted to a stipulation to the fact that defendant was on probation when he committed the offense, this Court held that "[e]ven assuming that defense counsel's statement did not amount to a stipulation, and that *Blakely* error occurred, any error was harmless beyond a reasonable doubt. *Id.* at 188-89, 652 S.E.2d at 20. This Court noted that (1) the defendant had admitted to police during an interview that he was on probation on the date of the offense; (2) defense counsel signed the stipulation on the prior record level worksheet which added one point to the defendant's prior record points based on the finding that he was on probation at the time of the offense; and (3) "the State said at trial that Defendant had one prior record level point because Defendant was on probation at the time of the offense, and defense counsel stated: 'I think that's correct, Your Honor.' " *Id.* at 189, 652 S.E.2d at 20. In finding no prejudicial error, this Court held that based on this uncontested evidence, "there was overwhelming and uncontroverted evidence that Defendant committed the offense of discharging a firearm into occupied property while he was on probation for another offense. Therefore, even if *Blakely* error occurred, any *Blakely* error was harmless beyond a reasonable doubt." *Id.*

Likewise here, at sentencing, defense counsel requested a recess, explaining that

Judge, I thought that the defendant was a Level IV based on what I was provided in discovery, so I'm not going to be able to stipulate to the record level or stipulate that the defendant was on probation in this case[.]

The trial court granted his request and after the recess, the trial court noted that "So, [defense counsel], [the prosecutor] handed up a work sheet. It appears to bear your signature. It's a stipulation." Defense counsel responded "Yes, sir. Yes, sir." The trial court in order to confirm defense counsel's affirmation asked "that it is 16 Prior Record Points, Level V for felony sentencing . . . ." Defense counsel again confirmed, "Yes, sir." Therefore, unlike the defense counsel in *Wissink II*, who merely signed the worksheet, defense counsel here took a recess to consult with the prosecutor and his client, before giving verbal assent to the contents of the prior record level worksheet. Defense

counsel also signed the worksheet, stipulating that it was correct that defendant committed the crime of possession of a firearm by a felon while he was on probation. Even though the issue of whether defendant was on probation at the time he committed this offense was not submitted to a jury, we hold that "if any *Blakely* error occurred, any *Blakely* error was harmless beyond a reasonable doubt" as there was "overwhelming and uncontroverted evidence that Defendant committed the offense of [possession of a firearm by a convicted felon] while he was on probation for another offense." *See Wissink*, 187 N.C. App. at 189, 652 S.E.2d at 20. Accordingly, we find no prejudicial error in the inclusion of the one point on defendant's prior record level worksheet for defendant being on probation at the time he committed the offense in question.

Defendant also contends that the trial court erred in assessing an additional one prior record level point based on the trial court's conclusion that all of the elements of the firearm possession were including in a prior offense, pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(6), as he did not have a prior conviction for possession of a firearm by a convicted felon. Defendant was sentenced in the presumptive range of sentences for Prior Record Level "V[.]" A defendant qualifies for a Prior Record Level "V" if he has 15 to 18 prior record level points. *See* N.C. Gen. Stat. § 15A-1340.14(c)(5). As noted above, defendant had 14 points based solely upon his prior convictions. According to the above analysis, the additional point based on defendant committing the crime while he was on probation was correctly assessed, bringing his total prior record points to 15. Even assuming arguendo that it was error for the trial court to add the 16th point pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(6), as defendant contends, this would be harmless error as the exclusion of that record level point would not reduce defendants prior record level to IV and ultimately reduce his sentence. Accordingly, defendant's argument is overruled and we find no prejudicial error as to defendant's sentencing for possession of a firearm by a felon.

VACATED IN PART AND NO PREJUDICIAL ERROR IN PART.

Judges GEER and THIGPEN concur.